UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SIDI LAI,

Petitioner,

v.

TODD BLANCHE, et al.,

Respondents.

CASE NO. C26-3636-BAT

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

Petitioner Sidi Lai petitions for 28 U.S.C. § 2241 habeas relief making the relief granted in the temporary restraining order (TRO) permanent. Dkts. 1, 10. For the reasons stated below, the Court **GRANTS** the habeas petition and **PERMANENTLY ENJOINS** Respondents, all their officers, employees, attorneys, and people acting on their behalf or in concert with them, from re-detaining Petitioner without (1) written pre-deprivation notice that complies with the parole termination requirements at 8 C.F.R § 212.5(e)(2)(i), and (2) a pre-detention hearing before a neutral decisionmaker at which Respondents shall bear the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no conditions other than her detention are sufficient to prevent such harms. Moreover, the Court clarifies that Petitioner is not subject to the expedited removal framework and cannot be detained under 8 U.S.C. § 1225(b)(1). Thus, the only exception to the proviso that Petitioner must be

accorded pre-deprivation notice and a hearing is if she becomes subject to mandatory detention as a criminal noncitizen under 8 U.S.C. § 1226(c), which currently is not the case.

## BACKGROUND

Petitioner is a 40-year-old native and citizen of China. Dkt. 1, at 3. Although not presently detained, she is "in custody" in the meaning of 28 U.S.C. § 2241 by virtue of the terms of her supervision by U.S. Immigration and Customs Enforcement (ICE). *See* Dkt. 7, at 3–6 [hereinafter TRO Order]. In 2022, she was initially being processed for expedited removal but days later was paroled into the United States under 8 U.S.C. § 1182(d)(5) and has resided in the Seattle area for over four-and-a-half years. Dkt. 1, at 3–4.

Upon her original detention in February 2022, Petitioner communicated her fear of returning to China because she was being forced by government mandate to have a third child that she did not want to bear. Dkt. 4-2, at 3, 5. She was not, however, scheduled for a Credible Fear Interview (CFI) under 8 U.S.C. § 1225(b)(1)(B), 8 C.F.R. § 208.30. In June 2025, U.S. Citizenship and Immigration Services (USCIS) issued a notice of dismissal of her June 2022 asylum application because Department of Homeland Security (DHS) records purportedly indicated that she had earlier been placed into expedited removal proceedings and that she would receive an appointment for her CFI "at a later date." Dkt. 4-8, at 2. More than a year later, in a notice dated September 3, 2026, USCIS scheduled Petitioner for a CFI for September 29, 2026, at 8:00 a.m., at an ICE building in Yakima Washington. Dkt. 4-9, at 2. Neither USCIS nor Respondents explained why Petitioner was required to report to the ICE facility in Yakima—outside of the Western District of Washington and a two-and-a-half hour drive from her home in Shoreline and her counsel's office in Seattle—rather than to the ICE facility in Seattle. Dkt. 1, at 7. Petitioner's request to reschedule her CFI to occur at the ICE facility in Seattle was denied and

Respondents declined to provide any assurances that Petitioner would not be detained at this interview. *Id.*; Dkt. 5 ¶¶ 4–5 (Declaration of Anna D. Deal).

On September 28, 2026, the Court granted Petitioner's motion for a TRO to enjoin Respondents from detaining Petitioner at the September 29, 2026 CFI or thereafter and ordered the parties to brief the merits of the habeas petition on an expedited schedule. TRO Order 11–12. According to Petitioner, the September 29, 2026 CFI lasted nearly five hours. Dkt. 10, at 3. Petitioner states that the interviewing asylum officer, appearing remotely and by audio only, had apparently not received or reviewed Petitioner's over 300 pages of supporting evidence. *Id.* at 2–3. Petitioner asserts that although the officer found Petitioner to have testified credibly, a Negative Credible Fear Determination was entered. *Id.* at 3. In contrast, Respondents "represent that no asylum officer has made a credible-fear finding and that no notice to appear has issued to their knowledge." Dkt. 9, at 2. Petitioner states that she has requested Immigration Judge (IJ) review of the credible fear decision under 8 U.S.C. § 1225(b)(1)(B)(iii)(III) despite also contesting the applicability of § 1225(b). Dkt. 10, at 3.

## DISCUSSION

### 1. Legal Standards

District courts may grant writs of habeas corpus "within their respective jurisdictions." 28 U.S.C. § 2241(a). This authority extends to challenges to immigration custody. *Zadvydas v. Davis*, 533 U.S. 678, 687 (2001). A petitioner may obtain relief by showing that he is "in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c). The petitioner bears the burden of proof by a preponderance of the evidence. *Davis v. Woodford*, 384 F.3d 628, 638 (9th Cir. 2004).

**2. Detention Authority**

Despite her voluntary participation in the CFI process, Petitioner maintains that she is not lawfully subject to the expedited removal framework at § 1225(b)(1) because, based on the plain language of the statute, ICE's decision to parole her into the United States on February 15, 2022, permanently places her outside that statutory scheme, regardless of whether her parole has expired or been terminated, and by what process, or whether parole remains valid. Moreover, Petitioner notes that no expedited removal order has ever been entered for Petitioner. The Court agrees with Petitioner. The asylum officer's negative credible fear determination, and any forthcoming affirmance by an IJ, does not bring Petitioner within the ambit of the expedited removal statue given that she was paroled into the U.S. more than four years ago. Mandatory detention under § 1225(b)(1) does not, therefore, provide the authority for Petitioner's future detention.

In 2022, U.S. Customs and Border Protection began processing Petitioner for expedited removal under 8 U.S.C. § 1225(b)(1) by partially completing Form I-860, Notice and Order of Expedited Removal. Dkt. 4-1, at 2. However, the lower portion of Form I-860, Order of Removal Under Section 235(b)(1) of the Act, was not completed or signed by anyone, nor was the certificate of service ever signed. *Id.* Days later, Petitioner was granted humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). Implementing regulations provide that, when such parole terminates automatically, no written notice is required and the noncitizen "shall be restored to the status that he or she had at the time of parole." 8 C.F.R. § 212.5(e)(1), (e)(2)(i). Respondents thus argue that Petitioner is subject to mandatory detention based a negative credible fear finding and the authority of the unsigned Form I-860 order of expedited removal:

> If a credible fear is not found, the expedited-removal order will be enforced according to applicable law, including immigration-judge

> review of the negative finding. 8 U.S.C. § 1225(b)(1)(B)(iii)(I), (III); 8 C.F.R. § 1003.42. Detention pending that determination, and until removal if fear is not found, is mandatory unless parole is granted. 8 U.S.C. § 1225(b)(1)(B)(iii)(IV).

Dkt. 9, at 5.

As a preliminary matter, the Court notes that Petitioner submitted a Form I-860 order of expedited removal that is unsigned and therefore invalid, despite Respondent's inability to confirm or contest the authenticity of the document in the absence of having ever reviewed the A-file. Dkt. 4-1, at 2; *see* Dkt. 9, at 3. More saliently, however, Petitioner does not fit the criteria for being a noncitizen subject to expedited removal under § 1225(b)(1).

Section 1225 authorizes expedited removal of a noncitizen who either (1) "is arriving in the United States" or (2) "has not been admitted or paroled into the United States, and . . . [not] been physically present in the United States" for two years continuously. 8 U.S.C. § 1225(b)(1)(A)(i)-(iii). The first category does not apply because Petitioner is no longer "arriving." The Ninth Circuit has held that a person physically present in the United States, as Petitioner has been for over four-and-a-half years, is not "arriving" for purposes of § 1225(b). *Al Otro Lado v. Wolf*, 952 F.3d 999, 1011–12 (9th Cir. 2020) (noting "distinction between [a noncitizen] who is already 'physically present in the United States' on the one hand and arriving [noncitizens] on the other"). Petitioner entered the United States without inspection, rather than presenting at a port-of-entry, and has now been residing in the U.S. for years under a grant of humanitarian parole. She was not and is not an arriving noncitizen as defined in 8 C.F.R. § 1.2, and was not and is not an arriving noncitizen subject to expedited removal under § 1225(b)(1)(A)(i). *See* 8 C.F.R. § 1.2 ("Arriving alien means an applicant for admission coming or attempting to come into the United States at a port-of-entry, or an alien seeking transit through the United States at a port-of-entry, or an alien interdicted in international or United States

waters and brought into the United States by any means, whether or not to a designated port-of-entry, and regardless of the means of transport."); *cf. Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026) (holding that noncitizens present without admission and apprehended in the U.S. interior are governed by § 1226 rather than by the mandatory detention statute § 1225).

The second category cannot apply because Petitioner has been paroled. This Court has "join[ed] others throughout the country in concluding that 'a noncitizen who has been paroled into the United States cannot later be subject to expedited removal, even if their parole has expired or been terminated.'" *Asad v. Noem*, No. C26-620-MLP, 2026 WL 775628, at *2 (W.D. Wash. Mar. 19, 2026) (quoting *Robles-Rodriguez v. Lyons*, 2026 WL 303482, at *4 (E.D. Cal. Feb. 4, 2026)); *see, e.g.*, *Guzman v. Bondi*, 2026 WL 1534682, at * (D.N.J. June 1, 2026) ("Like other courts that have addressed this language, this Court finds that this phrase "does not refer to a legal status but rather to the event of entry into the United States via admission or parole, which either did or did not occur."); *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, (E.D.N.Y. 2025) ("Because Rodriguez-Acurio's parole served to permit Rodriguez-Acurio to move from the border to the interior of the country, it functionally served to do exactly what its plain text conveys—'parole [her] *into* the United States" and out of expedited removal.'") (quoting 8 U.S.C. § 1182(d)(5)(A) with added emphasis). Accordingly, Petitioner is no longer subject to expedited removal under § 1225(b)(1).

Because the criteria for § 1225(b) are not met, the Court concludes that Petitioner's detention is not mandatory and is governed by 8 U.S.C. § 1226 for detention authority and 8 U.S.C. § 1229a for immigration court removal proceedings.

**3. Due Process**

Petitioner argues that due process requires not only pre-detention notice under the parole termination regulations, but also a pre-deprivation hearing at which the government bears the burden of proof. The Court agrees.

Under the Due Process Clause of the Fifth Amendment to the United States Constitution, no person shall be "deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992)). Numerous district courts have found that individuals like Petitioner, having previously been released on humanitarian parole, have a protected liberty interest in remaining out of custody and should be afforded pre-deprivation proceedings prior to re-detention. *See, e.g.*, *Yao v. Mullin*, No. C26-1599-BAT, 2026 WL 1596276 (W.D. Wash. June 4, 2026) (holding that petitioner should be afforded pre-detention notice and a hearing before a neutral decision maker); *N.I. v. Hermosillo*, No. C26-592-BAT, 2026 WL 770038, at *2 (W.D. Wash. Mar. 18, 2026) ("Petitioner's mandatory detention under § 1225 does not eliminate his liberty interest"); *Osuna Benitez v. Hermosillo*, 2025 WL 3763932 (W.D. Wash. Dec. 30, 2025) (collecting cases); *Pinchi v. Noem*, 792 F. Supp. 3d at 1025, 1032 (N.D. Cal. 2025) (collecting cases); *Ramirez Tesara v. Wamsley*, 800 F. Supp. 3d 1130, 1136 (W.D. Wash. 2025) (mandatory detention under § 1225(b) despite noncitizens' due process rights and with no consideration of their deep financial, community, and familial ties in the country raises constitutional issues). Regardless of whether Petitioner's parole has expired on its own terms, Petitioner's liberty interest does not expire along with her parole. *Omer G. G.*, 815 F. Supp. 3d 1098, 1109 (E.D. Cal. 2025); *Ramirez*

*Tesara*, 800 F. Supp. 3d at 1136. “Once established, Petitioner's interest in liberty is a constitutional right which may only be revoked through methods that comport with due process, such as a hearing in front of a neutral party to determine whether Petitioner's re-detainment is warranted.” *Ramirez Tesara*, 800 F. Supp. 3d at 1136.

The Court finds that Petitioner has a protected liberty interest in being free from unlawful detention. The Court therefore evaluates Petitioner’s due process claim under *Mathews v. Eldridge*, 424 U.S. 319 (1976), to determine what procedures are constitutionally sufficient to protect that interest. The Court assesses (1) “the private interest that will be affected by the official action”; (2) “the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards”; and (3) “the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.” 424 U.S. at 335.

First, the parties agree that Petitioner has a substantial private interest in remaining out of detention. Her interest in not being detained “is the most elemental of liberty interests.” *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004). Since 2022, Petitioner has lived freely in the United States, has a work permit that has been renewed through December 2029, and has a U.S. citizen husband. Dkt. 1, at 5–6; Dkt. 4-7, Dkt. 4-10. Her liberty interest exists regardless of the government’s discretion to release her on parole. *Ramirez Tesara*, 800 F. Supp. 3d at 1136. (citing *Pinchi*, 792 F. Supp. 3d at 1032); *see Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (“The Supreme Court has repeatedly recognized that individuals who have been released from custody, even where such release is conditional, have a liberty interest in their continued liberty.”). The first *Mathews* factor weighs in Petitioner’s favor.

Second, the Court considers the risk of erroneous deprivation of Petitioner's liberty interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards. To the extent Respondents argue that the automatic termination without notice or the written notice provisions of 8 C.F.R. § 212.5(e)(2)(i) are sufficient to protect Petitioner's right to due process, the Court disagrees. Respondents admit that, in accordance with their interpretation of § 1225(b)(1), they intend to subject Petitioner to mandatory detention without notice in the event of a negative credible fear determination that has, according to Petitioner, already occurred. *See* Dkt. 9, at 5; Dkt. 10, at 4. To the extent that Respondents attempt to rely upon an automatic expiration of the parole after a one-year period, that the government continued to permit Petitioner to live and work freely for years demonstrates a constructive extension of the parole. Petitioner reasonably relied upon her continued liberty being contingent on satisfying the same conditions of parole for the years after the technical expiry of her parole without any indications to the contrary. Moreover, the record does not reflect any finding by the government that (1) "the purpose for which parole was authorized" has been accomplished, or (2) "neither humanitarian reasons nor public benefit warrants" Petitioner's presence in the United States. 8 C.F.R. § 212.5(b)(2)(i). Thus, whether Petitioner's parole is revoked "automatically" or "on notice," the government has expressed its intent to wield § 1225(b)(1) mandatory detention as a means for violating its own regulations, which it is not free to disregard. *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954). The Court finds that the procedures proposed by Respondents here—mandatory detention without notice, automatic termination of parole without notice, or termination of parole with written notice only—run a high risk of erroneous detention, and notice and a hearing before a neutral

decisionmaker would have a high probability of reducing that risk. The second *Mathews* factor weighs in favor of Petitioner.

Third, Respondents' interest in Petitioner's immediate civil detention is low. While the government has a strong interest in preventing noncitizens from remaining in the United States in violation of the law, *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1208 (9th Cir. 2022), the public interest in civil detention without notice and a hearing is not high, where Petitioner has no criminal history and has shown no propensity to flee the life and work she has established over the past four-and-a-half years. Regulations provide that, to parole Petitioner in the first place, DHS necessarily found that she "present[ed] neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Compared to Petitioner's liberty interest, Respondents' interest in re-detaining her without procedural safeguards is low. The third factor weighs in favor of Petitioner.

The Court accordingly finds Petitioner has a protected liberty interest in remaining free from detention under the conditions of her parole agreement and all the *Mathews* factors weigh in her favor. *See Ramirez Tesara*, 800 F. Supp. 3d at 1139. Due process requires that, unless there are changed circumstances requiring mandatory detention under 8 U.S.C. § 1226(c), Petitioner must be provided with notice and a hearing before a neutral decisionmaker before she can be re-detained. *See Ramirez Tesara*, 800 F. Supp. 3d at 1139; *Pinchi*, 792 F. Supp. 3d. at 1038.

**4. Permanent Injunction**

Petitioner asks that the Court make the relief granted in its TRO permanent. A party seeking a permanent injunction must satisfy a four-factor test:

> A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and

> defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay Inc. v. MercExchange, L.L.C.,* 547 U.S. 388, 391 (2006). Petitioner has demonstrated all four factors.

First, Petitioner has shown that she has suffered irreparable injury. Respondents have clearly expressed their intent to subject Petitioner to mandatory detention based on an erroneous interpretation of § 1225(b)(1) that violates her right to due process. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Second, the remedies available at law are inadequate to compensate from the constitutional injury that would deprive her of her liberty without notice and an opportunity to be heard. Third, the balance of the equities and the public interest, which merge when the government is the opposing party, tip sharply in Petitioner's favor. *See Nken v. Holder*, 556 U.S. 418, 435 (2009). "[T]he public has a strong interest in upholding procedural protections against unlawful detention, and the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Jorge M. F. v. Wilkinson*, 2021 WL 783561, at *3 (N.D. Cal. Mar. 1, 2021). 2021 WL 783561 (citations and internal quotation marks omitted). Without the requested injunctive relief, Petitioner might be abruptly taken into detention, subjecting her to significant hardship. The comparative harm potentially imposed on Respondents is minimal: a short delay in detaining Petitioner should Respondents ultimately show that detention is warranted. A party "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. INS*, 753 F.2d 719, 727 (9th Cir. 1983). The Court has not concluded that Petitioner may not be detained in the future; rather, the Court has

concluded that Petitioner may not be detained in the absence of procedural safeguards to ensure her right to due process is not violated.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Petitioner's habeas petition. Respondents and all their officers, employees, attorneys, and people acting on their behalf or in concert with them are **PERMANENTLY ENJOINED** from re-detaining Petitioner without written pre-detention notice and a hearing before a neutral decisionmaker unless detention is statutorily mandatory under 8 U.S.C. § 1226(c), which currently is not the case. At any re-detention hearing, Respondents and all their officers, employees, attorneys, and people acting on their behalf or in concert with them shall bear the burden to show by clear and convincing evidence that Petitioner is a flight risk or a danger to the community and that no conditions other than her detention would be sufficient to prevent such harms. Petitioner's counsel may move for Equal Access to Justice Act fees and other expenses consistent with the law and the statute.

DATED this 12th day of October, 2026.

BRIAN A. TSUCHIDA
United States Magistrate Judge